1

2

3

4

5

6              IN THE UNITED STATES DISTRICT COURT

7

8          FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10   ARLENE TOM,                                    No. C 16-01067 WHA

11           Plaintiff,

12       v.

13   HARTFORD LIFE AND ACCIDENT            **FINDINGS OF FACT AND**
     INSURANCE COMPANY,                    **CONCLUSIONS OF LAW**
14

15           Defendant.
                                    /
16

17                          **INTRODUCTION**

18       Defendant in this diversity action contends that plaintiff's causes of action in connection

19   with a cutoff of her long-term disability benefits are preempted by the Employee Retirement

20   Income Security Act.  This order agrees based upon findings of fact and conclusions of law

21   after a one-day bench trial, as set forth below.

22                       **PROCEDURAL HISTORY**

23       Plaintiff Arlene Tom worked as an accounting partner/principal for non-party Grant

24   Thornton LLP from 2007 to 2009.  In March 2016, she brought this action against defendant

25   Hartford Life and Accident Insurance Company in connection with Hartford's decision to cut

26   off her long-term disability (LTD) benefits.  The complaint asserted only state law causes of

27   action for breach of contract and breach of the covenant of good faith and fair dealing.  Hartford

28   moved for summary judgment on the ground that the Employee Retirement Income Security

     Act preempted this action.  Tom, however, contended that she received LTD benefits under a

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   separate plan that covered only partners/principals, and that ERISA thus did not apply.  After

2   supplemental discovery, briefing, and oral argument, the undersigned denied summary

3   judgment in favor of a bench trial on the limited issue of ERISA preemption.

4        At trial, the Court heard testimony from Lou Ann Hutchison, a regional Director of

5   Human Resources and then national Director of Operations at Grant Thornton during the

6   relevant time period; John Choi, a National Account Executive at Hartford; and Karen Suller,

7   an Implementation Manager at Hartford during the relevant time period.  Each side then

8   submitted proposed findings of fact and conclusions of law.  Any proposal expressly agreed to

9   by the opposing side at least in part shall be deemed adopted to the extent agreed upon, even if

10   not expressly adopted herein.  Citations to the record herein are provided only as to particulars

11   that may assist the court of appeals.  All declarative statements herein are factual findings.

12                    **STATEMENT OF FINDINGS OF FACT**

13        The factual dispute in this case centers around two apparent inconsistencies in the

14   record. *First*, certain documents generated by Hartford seemed to refer to a plan numbered 501

15   whereas Grant Thornton's documents referred to the Plan number as 509.  *Second*, different

16   documents sported what appeared to be different versions of Hartford's LTD policy number.

17   This order concludes that the use of 501 in Hartford's documents was due to a clerical error;

18   that Grant Thornton maintained a comprehensive multi-benefit ERISA plan — numbered 509

19   — that encompassed LTD benefits funded by Hartford's policy; and that differences in how

20   various documents identified Hartford's LTD policy are immaterial, as discussed below.

21        1.      Grant Thornton established and maintained the Grant Thornton LLP Health and

22   Welfare Benefits Plan (the "Plan") to provide various benefits — including LTD insurance —

23   to its employees and partners/principals.  Grant Thornton funded these benefits through

24   piecemeal group insurance contracts with different insurers.

25        2.      During the relevant time period, Grant Thornton administered the Plan, reviewed

26   claims and appeals, and made decisions regarding the design of the Plan.  Grant Thornton

27   worked off of a "wrap document" titled, "Grant Thornton LLP Health & Welfare Benefits Plan

28   Amended and Restated Effective January 1, 2002."  The cover page of the wrap document

United States District Court

For the Northern District of California

1    contained a notation that read, "DRAFT 9/15/2003" (Exh. 21).  Despite bearing the legend

2    "DRAFT," this wrap document functioned as a plan document within the meaning of ERISA.

3         3.    The wrap document stated, "This Plan is intended to constitute a welfare plan

4    under section 3(1) of ERISA," and noted that the Plan might include various "health and

5    welfare benefit programs," including LTD benefits (*id.* at 6).  The wrap document incorporated

6    by reference the Plan's participating benefit programs, among other things (*id.* at 14).

7         4.    In June 2007, Grant Thornton — which had previously funded its LTD benefits

8    through a group policy from Life Insurance Company of North America — decided to switch to

9    a new insurer for said benefits.  Through its consulting firm, then named Towers Perrin, Grant

10   Thornton issued a request for proposal (RFP) to different insurers, including Hartford, to initiate

11   the process of selecting "qualified vendors to administer and insure the Life, AD&D [accidental

12   death and dismemberment], and LTD plans for Grant Thornton Employees and Partners

13   effective January 1, 2008" (Exh. 2 at 3).

14        5.    The RFP explained that Grant Thornton's LTD program was "fully-insured and

15   100% employee-funded with . . . high level plan provisions," including three classes of

16   beneficiaries for (1) full equity partners and principals, (2) equity partners and principals, and

17   (3) employees.  The RFP also contained a questionnaire that asked over one hundred questions

18   of potential insurers.

19        6.    In response to the RFP, Hartford prepared and submitted a proposal of benefits

20   that included LTD insurance for two classes of beneficiaries — (1) employees and (2) all

21   partners/principals.  The two classes had different elimination periods and definitions of

22   disability, such that "The partners effectively had a richer plan" (TX 145:1–145:16).

23        7.    Hartford prepared the proposal under the express assumption, among others, that

24   "the plan of benefits is subject to ERISA regulations" (Exh. 3 at 12).

25        8.    After Hartford submitted its proposal, it learned from Towers Perrin that it was a

26   "potential finalist" and was "encouraged to reduce [its] pricing a little bit, to try to make that

27   finalist round."  Hartford reduced its LTD pricing and was awarded a "finalist meeting," during

28   which Choi and a team from Hartford met with representatives from Towers Perrin and Grant

United States District Court

For the Northern District of California

1    Thornton.  Following that meeting, Grant Thornton awarded Hartford the contract to fund the

2    Plan's LTD benefits.

3         9.     Grant Thornton received better pricing from Hartford by applying for a single

4    insurance policy with two classes of beneficiaries, as opposed to two policies with one class of

5    beneficiaries apiece (TX 71:2–71:12, 143:6–143:15, 152:12–153:12).  Plan beneficiaries also

6    received better pricing for their benefits by going through Grant Thornton's group policy, as

7    opposed to individual policies (TX 63:14–65:4, 70:9–70:14, 154:19–155:6).

8         10.    As part of the new policy implementation process, Grant Thornton submitted a

9    formal group insurance application to Hartford.  The application confirmed that the "benefit

10   plan, for which insurance is being requested, [was] subject to the requirements of [ERISA],"

11   and identified the Plan number as 509 (Exh. 1 at 80).  Hartford accepted Grant Thornton's

12   application.

13        11.    During the relevant time period, Grant Thornton annually filed Form 5500

14   (Annual Return/Report of Employee Benefit Plan) with the Internal Revenue Service and

15   Department of Labor.  The filings identified the "Grant Thornton LLP Health and Welfare

16   Benefits Plan" as an ERISA plan, and the Plan number as 509.  The filings also identified

17   Hartford as an insurer for the Plan, and its contract number as 675845G.

18        12.    In July 2007, Tom became a partner/principal at Grant Thornton.  She enrolled

19   for LTD coverage through the Plan.

20        13.    As part of the implementation process, on September 21, 2007, Suller and her

21   team from Hartford attended a kickoff meeting at Grant Thornton.  Prior to that meeting, Suller

22   had prepared an implementation log (an Excel spreadsheet) to track the implementation process.

23   One item in the implementation log asked, "Is this an ERISA plan?  If so, please provide plan

24   number" (Exh. 17 at 4).  In 2007, Suller's practice was to fill in this item with the number 501

25   "as a placeholder" if she did not have the actual plan number (TX 177:12–178:22).  In

26   accordance with that practice, Suller identified the Plan number as 501 prior to the kickoff

27   meeting at Grant Thornton (TX 178:23–179:6).  Pursuant to the Department of Labor's

28

United States District Court

For the Northern District of California

instructions on filling out Form 5500, numbering for plans that provided only welfare benefits started at 501 and went upward from there (TX 122:19–124:21).

14.     During the kickoff meeting, no one confirmed what the actual Plan number should have been, so Suller never changed the "501" entry in her implementation log.  Nor did she change it at any other point during the implementation process (TX 179:7–179:14).

15.     Throughout the implementation process, Grant Thornton interacted with Hartford on a weekly basis, asking questions and making edits to policy documents.  For example, Grant Thornton decided the policy should include only two classes of beneficiaries, as opposed to the three described in the RFP.  Grant Thornton also requested separate insurance certificates (also referred to as booklet-certificates) for each class, and requested various changes to language contained in the booklets.

16.     Effective January 1, 2008, Hartford issued to Grant Thornton insurance policy number GLT-675845, which funded LTD benefits for both employees and partners/principals under the Plan.  In its 2008 open enrollment materials, Grant Thornton explained, "The Long Term Disability Plan will be managed by [Hartford] beginning January 1, 2008."  Tom's LTD coverage, like that of other Plan beneficiaries, automatically transferred to Hartford at that time.

17.     Grant Thornton continued to fund LTD benefits for the Plan through its contract with Hartford until 2011.  Tom stopped working at Grant Thornton in December 2009.

18.     Hartford's LTD policy included and expressly incorporated two insurance certificates — GBD-1200 A.1 (675845) GLT 1.17 (the "1.17 Certificate") and GBD-1200 A.1 (675845) GLT 2.12 (the "2.12 Certificate").  The 1.17 Certificate provided benefits information specific to partners/principals, whereas the 2.12 Certificate provided benefits information specific to employees.

19.     Both certificates contained a notice titled "ERISA Information" that stated, "This employee welfare benefit plan (Plan) is subject to certain requirements of [ERISA]," and identified the Plan number as 501 (Exh. 1 at 39, 73).  The ERISA notice in both certificates also stated, "The benefits described in this booklet-certificate (Booklet) are Provided under a group insurance policy (Policy) issued by [Hartford] . . . .  The Policy is incorporated into, and forms a

part of, the Plan" (*id.* at 40, 74).  The ERISA notice in both certificates included a statement of ERISA rights (*id.* at 41–44, 75–78).

20.     Hartford generated its policy documents, including the aforementioned insurance certificates, using a "source system" populated by data from Suller's implementation log.  Since Suller's implementation log identified the Plan number as 501, that number made its way into both certificates (TX 180:5–180:17).  Neither Hartford nor Grant Thornton discovered this error until 2011, after Grant Thornton had already moved away from contracting with Hartford and switched to a different insurer (TX 110:6–111:11, 209:22–210:5).  This explains why and how the insurance certificates identified the Plan number as 501 whereas Grant Thornton's other records identified it as 509.

**CONCLUSIONS OF LAW**

ERISA preempts state law causes of action insofar as they "relate to" an ERISA plan. 29 U.S.C. 1144(a).  An "employee welfare benefit plan" is subject to ERISA to the extent that it is a plan, fund, or program established or maintained by an employer or employee organization for the purpose of providing its participants or their beneficiaries with benefits.  29 U.S.C. 1002(1), (3).  "The existence of an ERISA plan is a question of fact, to be answered in light of all the surrounding facts and circumstances from the point of view of a reasonable person." *Kanne v. Conn. Gen. Life Ins. Co.*, 867 F.2d 489, 492 (9th Cir. 1988), *cert. denied*, 492 U.S. 906 (1989).

Section 2510.3-3(c)(2) of Title 29 of the Code of Federal Regulations further provides, "a partner in a partnership and his or her spouse shall not be deemed to be employees with respect to the partnership."  Thus, "a plan whose sole beneficiaries are the company's owners cannot qualify as a plan under ERISA." *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 264 (9th Cir. 1991).  Working owners of a business, however, may participate in an ERISA plan "[i]f the plan covers one or more employees other than the business owner and his or her spouse." *Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1, 6 (2004).

**United States District Court**
For the Northern District of California

Here, Tom's thesis is that she enrolled for LTD benefits pursuant to a plan that covered *only* partners/principals and was thus not subject to ERISA. Each leg of this position is contravened by the weight of the evidence elicited at trial.[*]

*First*, Tom contends Grant Thornton's Plan did not encompass Hartford's LTD policy, but the record shows otherwise and this order so finds. Grant Thornton solicited bids from potential insurers, selected Hartford, worked with Hartford to craft benefits provisions for the policy, and integrated Hartford's policy into an existing patchwork of Plan benefits. For example, when the policy took effect, Grant Thornton automatically transferred LTD coverage for previously enrolled Plan participants — including Tom — to Hartford. Moreover, during the relevant time period, Grant Thornton consistently identified both Hartford and its LTD policy as part of the Plan on Form 5500 filings. This integrative approach was consistent with Grant Thornton's overall *modus operandi* of funding the Plan through piecemeal group insurance contracts.

*Second*, Tom points out that Grant Thornton's Form 5500 filings and formal application to Hartford identified the Plan number as 509, but the insurance certificates identified it as 501 — a discrepancy that Tom contends shows there were two separate plans, with one covering only partners/principals and thus being exempt from ERISA. As stated, however, Suller explained at trial that she had used 501 as a placeholder number in her implementation log but never replaced that placeholder with the real Plan number. She further explained how this clerical error carried forward into the insurance certificates, which were generated by a system populated with data from her implementation log. This order concludes that Suller's testimony on this subject was entirely credible and fully accounts for the numbering discrepancy.

*Third*, Tom points out differences in the presentation of Hartford's LTD policy number across different sources. Specifically, the policy number appeared as GLT-675845 in a policy

---

[*] Before the trial, Tom also claimed Grant Thornton's involvement in the creation or administration of the Plan was insubstantial. Thus, she contended, her LTD benefits fell within the safe harbor exemption from ERISA set forth in Section 2510.3-1(j) of Title 29 of the Code of Federal Regulations (*see, e.g.*, Dkt. Nos. 105 at 5, 106 at 3). Now, however, Tom has abandoned her safe harbor argument, expressly agreeing that "the evidence supports Hartford's contention that Grant Thornton contributed to and endorsed the Hartford LTD Policy" (Dkt. No. 117 at 11). This order therefore does not further discuss the safe harbor issue.

United States District Court

For the Northern District of California

1    amendment but as 675845G in Grant Thornton's Form 5500 filings, and Hutchison referred to it

2    simply as policy number 675845 (TX 74:10–74:18).  It is not clear how these differences help

3    Tom's position, but in any case, the answer is simple.  Hutchison testified that the "GLT" in

4    GLT-675845 stands for "group long-term" (TX 74:12).  Suller similarly testified that the "G" in

5    675845G stands for "group" (TX 201:3–201:4).  And the insurance certificates Tom relies on

6    used simply "675845" in parentheses to denote their connection to Hartford's LTD policy.  The

7    key portion of the policy number was thus the actual *number*, i.e., 675845, used consistently

8    throughout the record.  Prefixes or suffixes like "GLT" and "G" were informative

9    accoutrements but did not signify different policies.  On this record, any suggestion that

10   different presentations of the same policy number in different contexts show that ERISA did not

11   apply to Tom's LTD benefits is implausible.

12          *Fourth*, Tom makes much of the fact that the wrap document for the Plan appears to be a

13   draft version, and that, in this litigation, Grant Thornton could not produce a *final* (as opposed

14   to draft), comprehensive document for Plan 509.  True, ERISA plans must be maintained

15   pursuant to a written instrument.  *Cinelli v. Sec. Pac. Corp.*, 61 F.3d 1437, 1441–42 (9th Cir.

16   1995).  This does not, however, require formal labeling (e.g., "final version") as Tom suggests.

17   *See, e.g.*, *Horn v. Berdon, Inc. Defined Ben. Pension Plan*, 938 F.2d 125, 127–28 (9th Cir.

18   1991).  Nor does it require a single comprehensive plan document, as opposed to multiple

19   documents that collectively form the written instrument — an approach more consistent with

20   the patchwork nature of Grant Thornton's Plan.  *See ibid.*; *see also Prichard v. Metro. Life Ins.

21   Co.*, 783 F.3d 1166, 1170 (9th Cir. 2015).  While it is a small mystery why a firm like Grant

22   Thornton could not locate a final operative document for the Plan, the record shows that Grant

23   Thornton indeed used the wrap document as a plan document, notwithstanding the "draft"

24   legend thereon.  There is thus no reason to conclude that Grant Thornton's inability to produce

25   a more polished Plan instrument defeats the existence of its ERISA plan.

26          In summary, Tom's position essentially requires viewing the specific subset of benefits

27   offered to principals/partners in isolation to find that it constituted a separate "plan," despite

28   evidence indicating that such benefits fit into (1) Hartford's single comprehensive LTD policy

United States District Court

For the Northern District of California

1   funding benefits for both employees and principals/partners and (2) Grant Thornton's single

2   comprehensive Plan providing benefits for both employees and principals/partners.  Construing

3   the record this way, however, would be at odds with controlling case law recognizing that a

4   patchwork benefit program can, taken as a whole, constitute an ERISA plan even if piecemeal

5   insurance policies within the program cover only partners/principals.  *See Peterson v. Am. Life*

6   *& Health Ins. Co.*, 48 F.3d 404, 407–08 (9th Cir. 1995); *cf. Shaw v. Delta Air Lines, Inc.*, 463

7   U.S. 85, 107–08 (1983) (the word "plan" for ERISA purposes does not refer to individual

8   benefits within a multi-benefit plan).  And, in light of all the facts and circumstances of this

9   case, the weight of the evidence supports Hartford's position that ERISA governed Tom's LTD

10  benefits during her time as a partner/principal at Grant Thornton.  ERISA thus preempts her

11  state law causes of action here.

### CONCLUSION

13        For the foregoing reasons, this action is **DISMISSED**.  Plaintiff may file an amended

14  complaint re-pleading her causes of action as ERISA claims and naming all necessary parties by

15  **MARCH 14 AT NOON**.  Since there is no right to a jury trial under ERISA, plaintiff's jury

16  demand is hereby **STRICKEN**.

17        All dates currently set in this case are hereby **VACATED**.  If plaintiff chooses not to

18  amend her complaint, then judgment will be entered in defendant's favor.

19        If plaintiff timely files an amended complaint re-pleading her causes of action as ERISA

20  claims, then the following procedure will be used:

21        •        Defendant shall file the "administrative record" and its motion for summary

22                 judgment by **APRIL 4**.  The motion should include a detailed declaration

23                 explaining what is and is not in the administrative record, as well as the manner

24                 and guidelines by which it was compiled.  Documents in the administrative

25                 record should be scanned with optical character recognition software and filed in

26                 word-searchable format.

27        •        Plaintiff shall file her opposition to defendant's motion for summary judgment,

28                 as well as any request for additional discovery, by **APRIL 18**.

- Defendant shall file any reply in support of its motion for summary judgment by **APRIL 25**.  Reply declarations are disfavored.
- A hearing on the motion for summary judgment will be set for **MAY 11**.  No further case management conference is necessary at this time.  If this case proceeds past the summary judgment stage, then a further case management order will issue.

**IT IS SO ORDERED.**

Dated:  February 28, 2017.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE