IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ARLENE TOM,

    Plaintiff,

  v.

HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY,

    Defendant.

No. C 16-01067 WHA

**ORDER RE MOTION FOR ATTORNEY'S FEES**

**INTRODUCTION**

In this action for benefits under ERISA, plaintiff moves for attorney's fees after a prior order dismissed the action as moot. The motion is **GRANTED IN PART** and **DENIED IN PART**.

**STATEMENT**

On March 2, 2016, plaintiff Arlene Tom brought this action against defendant Hartford Life and Accident Insurance Company in connection with Hartford's decision to cut off her long-term disability (LTD) benefits at the end of a two-year mental illness limitation period that would expire on March 31, 2017. The original complaint asserted only state law causes of action for breach of contract and breach of the covenant of good faith and fair dealing. This spawned two tracks of litigation, including contentious discovery, over (1) whether or not the Employee Retirement Income Security Act of 1974 applied and preempted Tom's state law claims, and (2) the merits of Tom's state law claims.

The following colloquy with Tom's counsel Constantin Roboostoff, taken from one of many discovery hearings in this action, sheds some light on why the costly debate over ERISA preemption persisted the way it did (Dkt. No. 95 at 32:3–14):

> The Court: It's crazy. Here's an $800,000 case. Does ERISA give attorneys' fees if you win?
>
> Mr. Roboostoff: Yes.
>
> The Court: But you don't want ERISA?
>
> Mr. Roboostoff: No.
>
> The Court: What do you want?
>
> Mr. Roboostoff: I want insurance bad faith, so I can get attorneys' fees, general damages, punitive damages, all of that nice stuff.
>
> The Court: Okay. So the grand slam home run. That's what you want.
>
> Mr. Roboostoff: Well, I'm always hopeful.

Ultimately, after numerous discovery disputes, motion practice, and a bench trial on the limited issue of ERISA preemption, a prior order agreed with Hartford that ERISA indeed applied and dismissed Tom's state law claims with leave to amend (Dkt. No. 121). All that litigation in pursuit of "the grand slam home run" came to nothing when Tom's counsel failed to muster adequate evidence to support his theory that ERISA did not apply. After the bench trial, Tom filed an amended complaint re-asserting her claims under ERISA (Dkt. No. 122).

Hartford then moved for summary judgment on the basis that this action was moot because Hartford had paid uninterrupted LTD benefits to Tom throughout this litigation and had further decided to continue paying benefits beyond March 31, 2017, while it continued to review Tom's claim (Dkt. No. 129). Tom opposed, protesting that Hartford's "capitulation" was a ruse to avoid an adverse judgment on the merits and that Hartford might still ultimately deny her claim if the action was dismissed (Dkt. No. 130). After full briefing and hearing, a prior order held Hartford's motion in abeyance to give it more time to consider and make a final decision on Tom's claim. That order set a further case management conference for September 21 to discuss the status of this action (Dkt. No. 134).

In a letter dated September 12, Hartford informed Tom that it had approved a continuation of her LTD benefits beyond the mental illness limitation period. Hartford filed that letter on the Court's docket on September 20, the day before the scheduled case management conference (Dkt. No. 147). As a result of that letter, which both sides agreed had mooted all outstanding issues in this litigation, an order after the case management conference dismissed this action as moot (Dkt. No. 148). Tom then filed a motion for attorney's fees, seeking over two hundred thousand dollars in fees and costs incurred over the course of this entire litigation (Dkt. No. 152). This order follows full briefing and oral argument.

**ANALYSIS**

1. **LEGAL STANDARDS.**

Section 1132(g)(1) of Title 29 of the United States Code provides, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." The Supreme Court has held that "a fee claimant need not be a 'prevailing party'" but "must show 'some degree of success on the merits' before a court may award attorney's fees under [Section] 1132(g)(1)." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252, 255 (2010). Our court of appeals has further explained that, "absent special circumstances, a prevailing ERISA employee plaintiff should ordinarily receive attorney's fees from the defendant." *Smith v. CMTA-IAM Pension Trust*, 746 F.2d 587, 590 (9th Cir. 1984).

In our circuit, a court exercising its discretion under Section 1132(g)(1) should consider, among other things, "(1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions." *Hummell v. S. E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir. 1980).

"To calculate attorney's fees awarded under [Section] 1132(g)(1), district courts utilize a two-step hybrid lodestar/multiplier approach." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945 (9th Cir. 2007). *First*, the court determines the appropriate lodestar amount by "multiplying the

3

1 number of hours reasonably expended on the litigation by a reasonable hourly rate." In doing
2 so, the district court may exclude "excessive, redundant, or otherwise unnecessary" hours and
3 must consider "the experience, skill, and reputation of the attorney requesting fees." *Id.* at
4 945–46 (quotations and citations omitted). *Second*, "in rare and exceptional cases, the district
5 court may adjust the lodestar upward or downward using a multiplier based on facts not
6 subsumed in the initial lodestar calculation." *Id.* at 946 (citation omitted). "The party seeking
7 fees bears the burden of documenting the hours expended in the litigation and must submit
8 evidence supporting those hours and the rates claimed." *Id.* at 945–46 (citing *Hensley v.*
9 *Eckerhart*, 461 U.S. 424, 433 (1983)).

10 "[T]he extent of a plaintiff's success is a crucial factor in determining the proper amount
11 of an award of attorney's fees." *Hensley*, 461 U.S. at 440. To determine fees in cases of partial
12 success, courts consider (1) whether the plaintiff failed to prevail on claims that were unrelated
13 to the claims on which they succeeded, and (2) whether the plaintiff achieved a level of success
14 that makes the hours reasonably expended a satisfactory basis for making a fee award. *E.g.*,
15 *Watson v. Cty. of Riverside*, 300 F.3d 1092, 1096 (9th Cir. 2002). Successful and unsuccessful
16 claims are unrelated if they are distinctly different both legally and factually. *E.g.*, *Dang v.*
17 *Cross*, 422 F.3d 800, 813 (9th Cir. 2005) (citations omitted). If the successful and unsuccessful
18 claims are related, then the court must evaluate the significance of the overall relief obtained by
19 the plaintiff in relation to the hours reasonably expended on the litigation. *Ibid.*

20 **2.  ENTITLEMENT TO FEES.**

21 **A.  Some Degree of Success on the Merits.**

22 Tom did not explain why she satisfied *Hardt*'s threshold requirement of "some degree of
23 success on the merits" in her seven-page-long motion. After Hartford argued in its opposition
24 that Tom did not qualify for fees under *Hardt*, Tom argued for the first time in her thirteen-
25 page-long reply — which is replete with new points not raised in the motion proper — that she
26 "succeeded on the crucial issue that her claim is not subject to the mental illness limitation" and
27 "also succeeded in establishing that other plan participants who suffer from *fibromyalgia* and/or
28 *cognitive deficits* will not be subject to the mental illness limitation" (Dkt. No. 155 at 6).

4

The second point is a non-starter. Setting aside for a moment the impropriety of new arguments in Tom's reply brief, at no point in this litigation did she purport to represent the interests or issues of any plan participants other than herself. Nor did she obtain any result that would be legally binding on Hartford in other cases. This is a transparent attempt by counsel to make this lawsuit appear more significant than it was for purposes of seeking attorney's fees. Moreover, it is nothing more than a bald assertion by counsel that collapses under even superficial scrutiny. LTD benefit claims are highly fact-intensive matters even between individuals with the same general diagnoses. There is no reason to believe that this particular lawsuit, which never even reached the merits of Tom's claim, will set a sweeping precedent for the broad universe of all LTD benefit claimants with fibromyalgia or cognitive deficits.

This order agrees, however, that Hartford's eventual decision to approve Tom's claim for continuing benefits constituted "some degree of success on the merits" for Tom because it was likely precipitated by this lawsuit rather than by any new claim information or deliberative process independent of judicial input. To highlight just one non-exhaustive example, at a discovery hearing on September 5, counsel for Hartford sought to compel Tom to undergo a neuropsychological evaluation and insisted that Hartford would likely not be able to make a decision without one (*see* Dkt. No. 146 at 28:21–24). The undersigned judge declined to compel the proposed exam at that hearing and warned counsel for Hartford that this action might resume and progress toward trial following the case management conference on September 21 (*see, e.g.*, *id.* at 28:9–16). Later that month, on the eve of the case management conference and despite counsel's protestations that Hartford needed a neuropsychological evaluation, Hartford filed notice of its decision to approve Tom's claim after all (*see* Dkt. No. 147). This example is non-exhaustive but illustrates why Hartford's decision was likely a product of this litigation as opposed to some independent administrative process.

In its opposition brief, Hartford cites numerous non-binding decisions for the proposition that "[a] dismissal stemming from the insurer's voluntary payment of benefits in an ongoing claim does not result in a fee award for ERISA claimants" (*see* Dkt. No. 154 at 2, 8–9). The best guidance on this point, however, comes from a decision by our own court of appeals.

In *Silk v. Metropolitan Life Insurance Company*, our court of appeals upheld the dismissal of an ERISA action for benefits on mootness grounds similar to those asserted by Hartford here. *See* 310 F. App'x 138, 139 (9th Cir. 2009). Indeed, Hartford itself had relied heavily on *Silk* to support its motion for summary judgment for mootness (Dkt. No. 129 at 11, 13–14). In its opposition to the instant motion, however, Hartford does not mention *Silk*, ostensibly because *Silk* specifically pointed out that, "[a]lthough post-filing developments led to the dismissal of Silk's action, the district court . . . had jurisdiction to award attorneys fees" and "could have awarded Silk's attorney's fees" under Section 1132(g)(1). *See* 310 F. App'x at 140. *Silk* indicates that, contrary to Hartford, the dismissal of this action for mootness upon Hartford's voluntary payment of benefits does not preclude Tom from seeking attorney's fees under Section 1132(g)(1).

Here, Tom obtained the relief sought by her ERISA complaint with Hartford's apparently litigation-driven decision to approve her claim for continuing benefits. Under these circumstances, this order finds that Tom has achieved "some degree of success on the merits" sufficient to qualify for attorney's fees under *Hardt*, subject to the *Hummell* factors that govern the exercise of discretion under Section 1132(g)(1) in our circuit.

### B. *Hummell* Factors.

#### (1) *Culpability or Bad Faith.*

Tom essentially contends her ERISA claim was so meritorious it would have warranted a finding that Hartford's "interpretation of the policy's definitions . . . and its handling of Tom's claim were unreasonable and in bad faith" (Dkt. No. 152 at 4–6). Hartford responds that no ruling was ever made on the merits of Tom's claim, which Hartford continues to dispute. Moreover, Hartford has continued to pay uninterrupted benefits since 2010, further belying any claim of culpability or bad faith. Hartford also contends Tom is actually the culpable party here because of her stonewalling in discovery (Dkt. No. 154 at 10–11).

Of course, any ERISA plaintiff could claim that the record would have supported a finding of culpability or bad faith had the Court sided with them on the merits. Here, the Court had no occasion to make any finding on the merits of Tom's ERISA claim and declines to do so

now for the sole purpose of sorting out satellite litigation over attorney's fees. Moreover, it remains true that Hartford's belated decision was made possible only by the considerable amount of time expended litigating state law claims that, as it turned out, Tom's counsel had little basis to pursue. Without that lengthy detour — during which Tom continued to receive uninterrupted benefits — Tom could perhaps have obtained a favorable ruling on the merits of her case long ago. On this record, this order finds that the first factor is neutral.

### *(2)* *Ability to Pay.*

The parties do not dispute that Hartford has the ability to pay an award of fees (Dkt. Nos. 152 at 6, 154 at 12). This factor weighs in favor of granting an award of fees.

### *(3)* *Deterrence.*

Tom contends "the practice of forcing [her] to litigate in Federal Court and at the last minute capitulating and admitting [she] was correct all along should not be tolerated" and "[she] can only hope that an award of attorney's fees and costs in this case will deter Hartford and other insurance carriers from similar conduct" (Dkt. No. 152 at 7). As stated, however, Tom's counsel bears considerable responsibility for the protracted path this litigation has taken. Moreover, it is a dubious proposition that insurance companies should be *deterred* from deciding to *award* benefits to which claimants say they are entitled, particularly under these circumstances. Significantly, Tom does not contend she has been prejudiced by Hartford's uninterrupted and continuing payment of benefits. Deterrence here would be unlikely to serve ERISA's remedial purpose. This factor weighs slightly against an award of fees.

### *(4)* *Benefitting Others.*

Tom contends this factor weighs in her favor "to the extent similarly situated ERISA plaintiffs in the future, who suffer from *fibromyalgia* and/or cognitive deficits, will be able to rely on the now settled interpretation of when a claim actually falls under the mental illness provision of the policy, and when it does not" (Dkt. No. 152 at 7). As stated, this argument is unpersuasive. Tom litigated this action only on her own behalf and has shown no reason to believe that her case — particularly in the absence of any ruling on the merits — would have any precedential value for other claimants. This factor is neutral.

*(5)* *Relative Merits.*

Tom contends this factor weighs in her favor because her ERISA claim was meritorious (*id.* at 7). As stated, no rulings or findings on the merits were made in this action, but Hartford's ultimate decision to approve Tom's claim suggests that her claim for benefits had some relative merit. This factor, and the balance of the *Hummell* factors as a whole, therefore weigh slightly in favor of granting fees.

### 3. AMOUNT OF FEES.

Tom's counsel argues for the first time in the reply brief that he is entitled to "fully compensatory" fees for partial success under *Watson* because he "obtained an excellent result" via Hartford's decision to continue benefits (*see* Dkt. No. 155 at 6–7). This, despite counsel's failure to achieve any degree of success — or even muster up a decent evidentiary showing — on the issue of ERISA preemption. Yet that issue consumed the lion's share of time and resources in this case, apparently in service of counsel's ambition to pursue a "grand slam home run" on state law claims. Under these circumstances, and even assuming Tom's failed state law claims were related to her ERISA claim within the meaning of *Watson*, this order finds that the results herein do not constitute "a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *See* 300 F.3d at 1096. This order therefore declines to award fees for Tom's counsel's performance through the bench trial on ERISA preemption.

Hartford does not dispute that Tom's counsel reasonably billed 57.85 hours in fees *after* the bench trial on ERISA preemption but contends his hourly rate should be reduced from $675 to $650 because Attorney Roboostoff's partner recently represented the latter to be the prevailing rate in another ERISA action (Dkt. Nos. 153-1 at 9–11; 154 at 2–3, 12–13, 16–17). Tom responds that Attorney Roboostoff's own declaration, plus the declaration of his fellow Bay Area ERISA attorney Laurence Padway, "adequately demonstrate" that the requested rate of $675 "is well within the range of the market rates charged by Bay Area attorneys of equivalent experience, skill and expertise for comparable services" (Dkt. No. 155 at 3).

Those declarations, and the examples of ERISA cases cited therein, at best indicate that the market rate varies between approximately six hundred and seven hundred dollars (*see* Dkt.

Nos. 153 at 3–5, 153-2 at 6–7). Under these circumstances, this order agrees with Hartford that the best indicator of an appropriate rate is the undersigned judge's recent decision in *Bosley v. Metropolitan Life Insurance Company*, wherein Attorney Roboostoff's own partner requested and received attorney's fees at the hourly rate of $650. No. C 16-00139, 2017 WL 4071346, at *3 (N.D. Cal. Sept. 14, 2017). Attorney Roboostoff will be awarded at the same rate here.

Neither side suggests that a lodestar multiplier is warranted in this case. The amount of fees appropriate to compensate Tom's counsel for his performance herein is therefore 57.85 hours multiplied by an hourly rate of $650, or $37,602.50.

Tom also seeks to recover an additional eight hours' worth of fees for counsel's time spent preparing the reply brief, plus another hour's worth for anticipated time spent at the motion hearing (Dkt. No. 155 at 13). As stated, however, the reply brief improperly raises new points that should have been made in the motion itself. The primary function of the hearing on this motion was to give Hartford an opportunity to respond to those points. This order therefore awards Tom only one hour's worth of additional fees for both the reply brief and the motion hearing, for a total award of **$38,252.50**.

Tom submitted a bill of costs along with her motion (Dkt. No. 150). All the costs listed, however, appear to have been accrued prior to the bench trial on ERISA preemption. This order therefore awards Tom only **FOUR HUNDRED DOLLARS** for the filing fee, which she would have incurred anyway if this action had originally been brought under ERISA.

## CONCLUSION

To the foregoing extent, plaintiff's motion for attorney's fees is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff is hereby awarded **$38,252.50** in attorney's fees and **FOUR HUNDRED DOLLARS** in costs.

**IT IS SO ORDERED.**

Dated: December 8, 2017.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

9